O

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZENAIDA ROQUE, | Case No. 2:14-cv-00040-ODW(SSx) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [4]** |
| v. | |
| WELLS FARGO BANK N.A.; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.; DOES 1–100, inclusive, | |
| Defendants. | |

## I.    INTRODUCTION

After falling behind on her mortgage payments, Plaintiff Zenaida Roque attempted to modify her loan with Defendant Wells Fargo Bank, N.A.—the ultimate successor of World Savings Banks, F.S.B.   But Roque alleges that Defendants engaged in dual tracking, recorded fabricated documents relating to her default, and made false statements to her during the purported loan-modification process. Defendants removed the case to this Court and then moved for dismissal.   They contend that the federal Home Owners' Loan Act ("HOLA") preempts Roque's claims and that Roque has failed to state other valid claims.   The Court finds that HOLA does not preempt Roque's claims and accordingly **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss.[1]

---

[1] After carefully considering the papers filed with respect to this Motion, the Court deems the matter appropriate for decision without oral argument.   Fed. R. Civ. P. 78; L.R. 7-15.

## II.    FACTUAL BACKGROUND

On January 25, 2006, Roque obtained a $548,000.00 adjustable-rate mortgage from World Savings Bank, FSB to purchase the residence located at 8629 Aqueduct Avenue in North Hills, California.  (Compl. ¶ 2; RJN Ex. A.[2])  World Savings Bank secured the note with a Deed of Trust; Defendant Golden West Savings Association Service Co. served as the initial trustee.  (Compl. ¶ 2; RJN Ex. B.)

World Savings Bank was a federal savings bank supervised by the Department of the Treasury's Office of Thrift Supervision ("OTS").  (RJN Ex. C.)  In November 2007, World Savings Bank changed its name to Wachovia Mortgage, FSB—another federal savings bank.  (RJN Ex. D.)

In November 2009, Wachovia Mortgage converted itself into Wells Fargo Bank, National Association.  (RJN Ex. F.)  Wells Fargo is therefore now under the supervision of the Office of the Comptroller of the Currency ("OCC").  (*Id.*; Ex. G.)

On October 30, 2013, Wells Fargo substituted Cal-Western Reconveyance LLC for Golden West as trustee.  (RJN Ex. I.)

At some point, Roque fell behind on her payments and requested, or Wells Fargo offered, a loan modification.  (Compl. ¶¶ 10, 17.)  But it does not appear that Roque's loan was ever successfully modified.  Roque alleges that Defendants made false statements to her during the loan-modification process, engaged in dual tracking, and refused to appoint a single point of contact.  (*Id.* ¶¶ 17, 18, 27.)

On November 20, 2013, Roque filed suit against Defendants in Los Angeles County Superior Court alleging claims for violations of California's Unfair Competition Law, California Penal Code section 115.5, and negligence.  (Not. of Removal Ex. A.)  Defendants thereafter removed the action to this Court on January 2, 2014, invoking diversity jurisdiction.  (ECF No. 1.)

/ / /

---

[2] The Court **GRANTS** Defendants' Request for Judicial Notice to the extent that the Court uses the documents adduced in this Order.  (ECF No. 5.)

1    On December 10, 2013—after Roque filed suit—Cal-Western Reconveyance
2    recorded a Notice of Default against Roque's property.  (RJN Ex. H.)  Roque contends
3    that Defendants never contacted her before recording the Notice of Default as required
4    by California Civil Code section 2932.5.  (Compl. ¶ 25.)

5    Roque also alleges that Defendants intentionally altered or backdated the
6    documents related to her default.  (*Id.* ¶ 12.)

7    On January 9, 2014, Defendants moved to dismiss Roque's Complaint for
8    failure to state a claim.  (ECF No. 4.)  Roque never opposed the Motion.  That Motion
9    is now before the Court for decision.

### III.   LEGAL STANDARD

11   A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable
12   legal theory or insufficient facts pleaded to support an otherwise cognizable legal
13   theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To
14   survive a dismissal motion, a complaint need only satisfy the minimal notice pleading
15   requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v.*
16   *Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to
17   raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550
18   U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter,
19   accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v.*
20   *Iqbal*, 556 U.S. 662, 678 (2009).

21   The determination whether a complaint satisfies the plausibility standard is a
22   "context-specific task that requires the reviewing court to draw on its judicial
23   experience and common sense."  *Id.* at 679.  A court is generally limited to the
24   pleadings and must construe all "factual allegations set forth in the complaint . . . as
25   true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d
26   668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations,
27   unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden*
28   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

1    As a general rule, a court should freely give leave to amend a complaint that has

2    been dismissed.  Fed. R. Civ. P. 15(a).  But a court may deny leave to amend when

3    "the court determines that the allegation of other facts consistent with the challenged

4    pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well*

5    *Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d

6    1122, 1127 (9th Cir. 2000).

7                                **IV.   DISCUSSION**

8    Defendants contend that HOLA preempts Roque's California Homeowner Bill

9    of Rights ("HBOR") claims and that Roque has failed to properly state a claim on her

10   other allegations.  But the Court finds that HOLA does not preempt the HBOR as

11   applied to Wells Fargo.

12   **A.   Claims against Golden West**

13   Defendants first argue that the Court should dismiss Golden West from this

14   action because Golden West did not record the Notice of Default against Roque and

15   was not involved in the foreclosure process.

16   While Defendants adduced the Substitution of Trustee and Notice of Default to

17   demonstrate that Cal-Western Reconveyance filed the Notice of Default and not

18   Golden West, the Court must accept all of Roque's factual allegations as true at this

19   stage.[3]   Roque alleges that all Defendants—including Golden West—intentionally

20   altered and backdated the documents related to this action.  While it may well be true

21   that Golden West played no active role in the foreclosure process, the Court cannot

22   properly make that conclusion at this motion-to-dismiss stage.

23   _____

24   [3] While the Court must accept Roque's allegations as true at this stage, the Court reminds Roque that
     she is subject to Federal Rule of Civil Procedure 11.  Rule 11 provides that by filing any paper with

25   the court, a party—whether an attorney or pro se—"certifies that to the best of the person's
     knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . .

26   [that] the factual contentions have evidentiary support or, if specifically so identified, will likely
     have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed.

27   R. Civ. P. 11(b)(2).  As this case progresses, Roque's allegations will be tested against the evidence.
     If it turns out that any allegations violate Rule 11, Roque may be subject to sanctions within the

28   Court's discretion.  *Id.* (c)(1).

**B.     HOLA preemption**

Defendants next assert that HOLA preempts Roque's HBOR claims.

Federal savings associations are organized under HOLA, and OTS supervises them. *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 970–71 (N.D. Cal. 2010); 12 U.S.C. §§ 1462(3) ("The term 'Federal savings association' means a Federal savings association or a Federal savings bank chartered under section 1464 of this title."), 1464 (authorizing charters for federal savings associations).   In contrast, OCC supervises national banks, also called national associations, under a different set of regulations.  *See Appling*, 745 F. Supp. 2d at 970–71; 12 C.F.R. § 7.100 *et seq.*

OTS promulgated a regulation preempting any state laws affecting federal savings associations' operations "to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation."   12 C.F.R. § 560.2(a).   The regulation states that "federal savings associations may extend credit as authorized under federal law . . . without regard to state laws purporting to regulate or otherwise affect their credit activities" with few exceptions.  *Id.*, § 560.2(c).   OTS also set forth a nonexhaustive list of state laws that the regulation preempts.  *Id.* § 560.2(b).

Defendants spend several pages of their Motion arguing which of Roque's claims are subject to HOLA preemption while largely skipping over the initial step in the analysis: whether HOLA preemption even applies to Wells Fargo.   Although Wells Fargo's predecessor, World Savings Bank, was a federal savings association, Wells Fargo is not.  Rather, Wells Fargo is a national bank organized under different laws and subject to supervision by a different federal governmental entity.   *See Appling*, 745 F. Supp. 2d at 970–71; 12 C.F.R. § 7.100 *et seq.*   Defendants implicitly recognize the hole in their argument when they argue that as a federal savings bank, "*World Savings* was organized and operated under the Home Owners' Loan Act"— not Wells Fargo.  (Mot. 4. (emphasis added).)

/ / /

5

1   This is not the first time that a court has considered whether HOLA preemption

2   applies to claims against Wells Fargo.  Many courts hold that HOLA preemption still

3   applies to Wells Fargo when the loan originated with World Savings Bank—a federal

4   savings bank.  *See, e.g.*, *Gorton v. Wells Fargo Bank NA*, No. SACV 12-1245-

5   JVS(MLGx), 2012 U.S. Dist. LEXIS 168158, at *10–13; *Castillo v. Wachovia Mortg.*,

6   No. C-12-0101 EMC, 2012 WL 1213296, at *4 (N.D. Cal. Apr. 11, 2012); *Copeland-*

7   *Turner v. Wells Fargo Bank*, 800 F. Supp. 2d 1132, 1144 (D. Or. 2011); *Appling*, 745

8   F. Supp. 2d 971; *Lopez v. Wachovia Mortg.*, No. C 10-01645 WHA, 2010 WL

9   2836823, at *2 (N.D. Cal. July 19, 2010).  But there is no controlling authority from

10  the Supreme Court or the Ninth Circuit.

11       The Court finds that it must follow the plain language of HOLA and the OTS

12  regulation.  By its own terms, HOLA only applies to "federal savings associations"

13  like World Savings Bank.  12 C.F.R. § 1462(3).  The preemption provision therefore

14  also only applies to federal savings associations.  OTS recognized as much when it

15  repeatedly used the term in the regulation.  For example, OTS intended "to give

16  *federal savings associations* maximum flexibility to exercise their lending powers in

17  accordance with a uniform federal scheme of regulation" and thus "occupie[d] the

18  entire field of lending regulation for *federal savings associations*."  *Id.* § 560.2(a)

19  (emphasis added).  In fact, in construing this regulation, OTS recognized the

20  difference between the two types of banks.  *See* Lending and Investment, 61 Fed. Reg.

21  50,951, 50,965 (Sept. 30, 1996).

22       Lastly, OTS also did not hinge its regulation's preemptive force anywhere on

23  the genesis of the loan; rather, the nature of the bank at issue is the defining criterion.

24  Since Wells Fargo is not a federal savings association, the Court finds that HOLA

25  does not preempt any claims against the bank.  *See Stalnaker v. Fid. & Deposit Co. of*

26  *Md.*, 2:10-CV-00964, 2011 WL 560675, at *3 (S.D.W. Va. Feb. 8, 2011) ("[The bank]

27  has cited no authority for, and the case law does not support an assertion that a

28  / / /

1  successor in interest to a federal savings bank is subject to HOLA preemption for
2  activities that took place *after* the federal savings bank dissolved.").

3  **C.    Unfair Competition Law**

4      Roque brings a claim against Defendants for violation of California Unfair
5  Competition Law ("UCL").   The UCL prohibits "any unlawful, unfair or fraudulent
6  business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.
7  Bus. & Prof. Code § 17200.   Defendants contend that Roque's UCL claim fails for
8  several reasons.

9      *1.    UCL standing*

10     To have standing to sue under the UCL, a plaintiff must have "suffered injury in
11 fact and [have] lost money or property as a result of the unfair competition."  Cal.
12 Bus. & Prof. Code § 17204.  The California Supreme Court held that to satisfy this
13 statute, the plaintiff must "(1) establish a loss or deprivation of money or property
14 sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that the
15 economic injury was the result of, i.e., *caused by,* the unfair business practice or false
16 advertising that is the gravamen of the claim."  *Kwikset Corp. v. Super. Ct.*, 51 Cal.
17 4th 310, 322 (2011).

18     Defendants argue that Roque has not alleged any injury and a loss of money or
19 property caused by any of Defendants' conduct.   Defendants contend that any of
20 Roque's injuries would be due to her failure to pay her mortgage as she promised—
21 not Defendants' actions.

22     But Roque does allege several economic injuries she suffered as a result of
23 Defendants' conduct, including money spent attempting to prevent losing her home,
24 loss of equity resulting from decreased marketability stemming from the allegedly
25 improper and fraudulent documents recorded against the residence, interest, legal fees,
26 and other costs.   (Compl. ¶ 21.)   These economic detriments easily satisfy the
27 California Supreme Court's interpretation of section 17204.  *See Kwikset*, 51 Cal. 4th
28 at 323 (interpreting the phrase "lost money or property").   Alleged conduct such as

fraudulently altering the foreclosure documents and thus decreasing the marketability and equity in Roque's home also fulfills the causation element.  *See id.* at 326 (interpreting "as a result of").

The Court therefore finds that Roque has standing to sue under the UCL.

2.       *"Unlawful" conduct*

UCL's "unlawful" prong "borrows" violations of other laws such that a "defendant cannot be liable under § 17200 for committing unlawful business practices without having violated another law."  *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Ct. App. 2005) (internal quotation marks omitted); *see also Farmers Ins. Exch. v. Super. Ct.*, 2 Cal. 4th 377, 383 (1992).

Defendants' attack Roque's allegations that Defendants violated California Civil Code sections 2932.5, 2923.7, and 2924.18.

Civil Code section 2932.5 provides that the power of sale given to secure payment of money is part of the security and vests in any person entitled to payment. The section goes on to state that the "power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded."  Cal. Civ. Code § 2932.5.  But since 1908, it has been established under California law that this section does not apply to deeds of trust, because the power of sale is not in the beneficiary; rather, the power of sale rests with the trustee.  *Stockwell v. Barnum*, 7 Cal. App. 413, 416–17 (Ct. App. 1908) (interpreting former Civil Code section 858, which is largely identical to current Civil Code section 2932.5).

Roque cannot, as a matter of law, state a claim against Defendants for violation of section 2932.5, because it simply does not apply.   The Court thus **GRANTS** Defendants' Motion on this ground.

As part of the freshly minted HBOR, California law provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of

contact."  Cal. Civ. Code § 2923.7(a).  Defendants assert that Roque never requested that Wells Fargo appoint a single point of contact.

But Roque did allege that "in early 2013 up to the current time, and prior to 2013, Plaintiffs [*sic*] requested that Defendants appoint a single point of contact to deal with the loss mitigation issues."  (Compl. ¶ 27.)  Defendants' argument therefore fails.  The Court accordingly **DENIES** Defendants' Motion on this ground.

The HBOR also now prohibits "dual tracking," or engaging in purported loan modification while simultaneously proceeding with foreclosure.  New Civil Code section 2924.18 provides that if a borrower submits a complete loan-modification application, the mortgage servicer may not record a notice of default until it has provided the borrower with a written determination regarding the borrower's eligibility for the modification.

Defendants contend that Roque does not allege that she either submitted a complete application or that a loan modification was pending when Wells Fargo recorded the Notice of Default.  Defendants also state that Roque is attempting to take advantage of a "hyper-technical" defect as a means to postpone the trustee's sale.

But Civil Code section 2924.18 is not "hyper-technical"; it is the law.  Roque repeatedly alleges that Defendants engaged in dual tracking (*e.g.*, Compl. ¶ 17), and the Court must accept that as true as this stage.  The Court consequently **DENIES** Defendants' Motion on this ground.

### 3. *"Fraudulent" conduct*

To state a claim under the UCL's "fraudulent" prong, a plaintiff "need only show that members of the public are likely to be deceived."  *Bank of the W. v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992) (internal quotation marks omitted).

Defendants assert that Roque does not state a claim for fraudulent conduct, because all of her other claims fail.  But as established in this Order, Roque has stated actionable claims.  Further, Roque repeatedly argues that Defendants fabricated documents to fill the gaps in the chain of title to Roque's residence and that the public

is likely to be confused by these false documents.  (*E.g.*, Compl. ¶ 16.)  The law requires no more of Roque.  The Court therefore **DENIES** Defendants' Motion on this ground.

> 4.    *"Unfair" conduct*

Interpreting the UCL's "unfair" term, the California Supreme Court held that "the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).

Roque has not, and likely cannot, allege how Defendants' actions rose anywhere near the level of anticompetitive activity.  The Court thus **GRANTS** Defendants' Motion on this ground.

**D.    Penal Code section 115.5**

Defendants next argue that there is no private cause of action for an alleged violation of California Penal Code section 115.5.  That section criminalizes filing a false or forged document or instrument with the county recorder affecting the title or a security interest in a single-family residence.  Cal. Pen. Code § 115.5(a).  But the section is silent on whether a plaintiff may bring a civil action to enforce its prohibitions.

California law uses the legislative-intent approach to determine whether a plaintiff has a claim to enforce a particular statute.  *Animal Legal Def. Fund v. Mendes*, 160 Cal. App. 4th 136, 142 (Ct. App. 2008).  If the Legislature intended that a plaintiff either have or not have a private claim, that ends the inquiry.  *Id.*  If the Legislature expressed no intent either way, there is no private right of action unless "compelling reasons of public policy" dictate otherwise.  *Id.* (finding no private right to enforce a Penal Code section).

/ / /

Here, it is unlikely that the Legislature intended to create a private right of action to enforce Penal Code section 115.5 when the Civil Code expressly provides several causes of action for fraud.  *See, e.g.*, Cal. Civ. Code §§ 1572 (defining "actual fraud" under contract law), 1710 (defining "deceit"), 3343 (proscribing fraud "in the purchase, sale or exchange of property").

The Court therefore **GRANTS** Defendants' Motion on this ground.

**E.    Negligence**

Defendants further contend that Roque has failed to state a claim for negligence under California law because lenders do not generally owe their borrowers a duty of care.

Under California law, the "existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence."  *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1095 (Ct. App. 1991).  But generally, a financial institution does not owe its borrower a duty of care "when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Id.* at 1096.  A lender exceeds its "conventional role" as a money lender when it "actively participates" in the financed enterprise "beyond the domain of the usual money lender."  *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (Ct. App. 1980) (quoting *Connor v. Great W. Sav. & Loan Ass'n*, 69 Cal. 2d 850, 864 (1968)).

Roque does not allege in her Complaint any facts suggesting that Wells Fargo exceeded the normal role of a lender during the default/foreclosure process.  Under her negligence claim, Roque asserts that Defendants failed to comply with the contact procedures set forth in Civil Code section 2923.5 and filed false declarations establishing compliance with the section.  (Compl. ¶ 25.)  She further alleges that Defendants failed to properly post and provide notice of the trustee's sale in violation of Civil Code section 2924 or properly record related documents.  (*Id.* ¶ 26.)  Lastly, / / /

Roque reiterates that Defendants engaged in dual tracking and refused to appoint a single point of contact.  (*Id.* ¶ 27.)

While Roque's allegations may make out statutory violations if true, they do not establish that Wells Fargo "actively participate[d]" in Roque's loan "beyond the domain of the usual money lender."  *See Wagner*, 101 Cal. App. 3d at 35.  Rather, these actions—or inactions such as they are—fall squarely within the class of conduct a lender might take during the default process.

To the extent that Roque relies on ordinary negligence, the Court **GRANTS** Defendants' Motion.

**F.     Civil Code section 2923.5**

Defendants lastly argue that they fully complied with Civil Code section 2923.5, so the Court should dismiss Roque's claim under this section.

Section 2923.5 provides that a mortgage servicer may not record a notice of default until 30 days after it, among others, contacts the borrower in person or by telephone to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  When the mortgage servicer complies with this requirement and subsequently records a notice of default, it must include a declaration with the notice establishing its compliance with this section.  Cal. Civ. Code § 2923.5(b).

Defendants provided the Court with the declaration that they included with the Notice of Default recorded against Roque's property—a declaration which they recorded after Roque filed suit.  The declaration states that Wells Fargo complied with Civil Code section 2923.5(b).  (RJN Ex. H.)  But while Defendants may well have done all that the law requires, the Court cannot assess the merits of Roque's claim at this stage.  Rather, the Court must accept as true Roque's allegations that Defendants violated section 2923.5.

The Court accordingly **DENIES** Defendants' Motion on this ground.

/ / /

**V.    CONCLUSION**

For the reasons discussed above, the Court **GRANTS IN PART** Defendants' Motion to Dismiss with respect to Roque's claims for violation of Civil Code section 2932.5, the UCL's unfair-competition prong, Penal Code section 115.5, and negligence.  (ECF No. 4.)  The Court **DENIES IN PART** Defendants' Motion on all other grounds.  Roque may amend her Complaint within 14 days with respect to the UCL's unfair-competition prong and common-law negligence only.

**IT IS SO ORDERED.**


February 3, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**